

Signed: November 18, 2009

_____
EDWARD D. JELLEN
U.S. Bankruptcy Judge
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

MICHAEL G. MOXLEY aka MGM'S CABINET INSTALLATION SERVICE,

         Debtor.   /

CARPENTERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA,

         Plaintiff,

vs.

MICHAEL G. MOXLEY aka MGM'S CABINET INSTALLATION SERVICE,

         Defendant.  /

No. 08-46685-EDJ-7
Adv. No. 09-4093 AJ

Date: 11/16/09
Time: 11:00 a.m.
Ctrm: 215

## DECISION

Plaintiff Carpenters Pension Trust Fund for Northern California (the "Fund") has moved for summary judgment in this adversary proceeding against defendant Michael G. Moxley, the above debtor ("Moxley"). The Fund's complaint alleges that Moxley owes it a debt resulting from his voluntary withdrawal from a multi-employer pension plan, and that such debt is nondischargeable herein pursuant to Bankruptcy Code § 523(a)(4) (fiduciary fraud or defalcation).

Decision

The court will deny the Fund's motion. Although Moxley has not moved for summary judgment, the court will also grant summary judgment in Moxley's favor on the ground that no genuine issues of material fact remain to be decided. See Fed. R. Civ. P. 56, applicable herein via Fed. R. Bankr. P. 7056; Cool Fuel Inc. v. Connett, 685 F.2d 309, 311 (9th Cir. 1982).

A. Background

The facts are undisputed, and are set forth at pages 2 - 6 of the Fund's Memorandum of Points and Authorities. In short, Moxley became a party in 1999 to a collective bargaining agreement entitled "The 46 Northern California Counties Carpenter's Master Agreement of Northern California" plus a modification thereof and an addendum thereto. As such, he was contractually obligated to make regular monthly contributions to the Fund pursuant to a trust agreement. (The foregoing documents are collectively referred to as the "Agreements.")

Moxley's obligations under the Agreements expired on June 30, 2004, and Moxley ceased making contributions to the Fund on July 1, 2004. For purposes of the present motion, Moxley has not disputed that following such cessation, he continued to perform work locally of the type for which contributions were previously required. The existence of these two conditions constituted a "withdrawal" under the Employee Retirement Income Security Act ("ERISA"),[1] and such

---

[1] ERISA § 4203(b)(2)(A), 29 U.S.C. § 1383(b); 29 U.S.C. § 1383(b)(2)(B)(i).

Decision 2

withdrawal triggered Moxley's liability to the Fund under the
Agreements and ERISA §§ 4201 - 4225, 29 U.S.C. §§ 1381 - 1404.[2]

Moxley has not paid the Fund his withdrawal liability, which
the Fund has calculated to be in the sum of $172,045, an amount that
Moxley disputes.[3]

On November 16, 2008, Moxley filed a voluntary chapter 7
petition herein. The present adversary proceeding followed.

B. <u>Summary Judgment</u>

Fed. R. Civ. P. 56(c), applicable herein via Fed. R. Bankr. P.
7056, provides in relevant part that summary judgment shall be
rendered "if the pleadings, depositions, answers to interrogatories,
and admissions on file, together with the affidavits, if any, show
that there is no genuine issue of material fact and that the moving
party is entitled to judgment as a matter of law."

In ruling, the court may not weigh the evidence, or determine
the truth of disputed matters asserted, but must only determine
whether there is a genuine issue for trial. <u>See</u>, <u>e.g.</u>, <u>Jesinger v.</u>
///

---

[2] ERISA § 4201(a), 29 U.S.C. § 1381 provides: "If an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability."

[3] The amount of any claim the Fund might have against the bankruptcy estate is not at issue herein, and the appropriate party to any future proceedings in that regard would be the trustee in bankruptcy, as representative of the estate pursuant to Bankruptcy Code §§ 323(a) and 704(a)(5).

Decision 3

Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994); Summers v. A. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997).

In addition, the court may, sua sponte, grant summary judgment to the party opposing summary judgment if the documents presented establish the absence of a genuine issue of material fact as to movant's case. Cool Fuel Inc. v. Connett, 685 F.2d 309, 311 (9th Cir. 1982).[4]

C. Discussion

Bankruptcy Code § 523(a)(4) provides:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt - . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

Here, there are two basic issues. The first is whether Moxley acted in a "fiduciary capacity" with reference to the Fund. The second is whether Moxley's failure to pay his withdrawal liability to the Fund was a "defalcation" within the meaning of § 523(a)(4).

1. Fiduciary Capacity

In In re Baird, 114 B.R. 198 (9th Cir. BAP 1990), the Ninth

---

[4] In Cool Fuel, 685 F.2d at 311, the Ninth Circuit stated:
. . . the overwhelming weight of authority supports the conclusion that if one party moves for summary judgment and, at the hearing, it is made to appear from all the records, files, affidavits and documents presented that there is no genuine dispute respecting a material fact essential to the proof of movant's case and that the case cannot be proved if a trial should be held, the court may sua sponte grant summary judgment to the non-moving party. (Citations omitted.)

Decision 4

Circuit Bankruptcy Appellate Panel took the occasion to explain the meaning of "fiduciary capacity" under Bankruptcy Code § 523(a)(4). The BAP explained:

> The meaning of 'fiduciary capacity' under section 523(a)(4) is a question of federal law, which has consistently limited this term to express or technical trust relationships. The broad general definition of a fiduciary relationship - one involving confidence, trust and good faith - is inapplicable in the dischargeability context. The debt alleged to be nondischargeable must arise from a breach of trust obligations imposed by law, separate and distinct from any breach of contract. In addition, the requisite trust relationship must exist prior to and without reference to the act of wrongdoing. This requirement eliminates constructive, resulting or implied trusts.

Baird, 114 B.R. at 202 (internal citations omitted).

A fiduciary capacity can arise by state or federal statute. In re Hemmeter, 242 F.3d 1186, 1190 (9th Cir. 2001). In this regard, "A statutory fiduciary is considered a fiduciary for purposes of § 523(a)(4) if the statute (1) defines the trust res; (2) identifies the fiduciary's fund management duties; and (3) imposes obligations on the fiduciary prior to the alleged wrongdoing." Id. See also Baird, 114 B.R. at 202.

Under ERISA, "[a] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan" ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). In Hemmeter, the Ninth Circuit held that the debtor was an ERISA fiduciary by virtue of his membership on the board of directors of the corporation that

Decision 5

employed the beneficiaries of the plan, coupled with the fact that the board was a named fiduciary of such plan. Hemmeter, 242 F.3d at 1190. The Ninth Circuit further held that "ERISA satisfies the traditional requirements for a statutory fiduciary to qualify as a fiduciary under Bankruptcy Code § 523(a)(4)." Id.

Here, Moxley did not act in a "fiduciary capacity" within the meaning of ERISA, and thus, within the meaning of Bankruptcy Code § 523(a)(4). The Fund does not allege that Moxley was a named fiduciary under the Agreements. Nor does the Fund allege that Moxley had any "fund management duties," one of the requisites for finding that a statutory fiduciary is a fiduciary under Bankruptcy Code § 523(a)(4). Hemmeter, 242 F.3d at 1190.

Rather, the Fund's allegation is limited to the fact that Moxley failed to pay his withdrawal liability after having made payments to the Fund for four years. Thus, argues the Fund, because that withdrawal liability was an asset of the Fund when it came due, and because Moxley "controlled" that asset, i.e., had discretion over whether he would use his personal assets to pay the Fund, he fit ERISA's definition of a fiduciary, and thus, is a fiduciary under Bankruptcy Code § 523(a)(4).

To support its argument, the Fund primarily relies on the Magistrate Judge's Report and Recommendation re Motion for Default Judgment, adopted by the district court, in Board of Trustees v. Atoll Topui Island, Inc., 2007 WL 174409 (N.D. Cal. 2007). In Atoll Topui, Bankruptcy Code § 523(a)(4) was not at issue. But the court did hold that one of the individual defendant's unpaid employer

Decision 6

contribution was a plan asset, and thus, that his failure to make the contribution made him a fiduciary under ERISA.

Respectfully, this court declines to apply <u>Atoll Topui</u> here, or extend its reasoning to hold that anyone owing contributions to a plan covered by ERISA is <u>ipso facto</u> acting in a fiduciary capacity for purposes of Bankruptcy Code § 523(a)(4).

First of all, <u>Atoll Topui</u> conflicts with the Ninth Circuit's opinion in <u>Cline v. Industrial Maintenance Engineering and Contracting Co.</u>, 200 F.3d 1223, 1234, wherein the court stated: "Until the employer pays the employer contributions over to the plan, the contributions do not become plan assets over which fiduciaries of the plan have a fiduciary obligation; this is true even where the employer is also a fiduciary of the plan." It also conflicts with the Ninth Circuit's opinion in <u>Collins v. Pension and Ins. Comm. of the Southern California Rock Prods. and Ready Mix Concrete Ass'ns</u>, 144 F.3d 1279, 1282 (9th Cir. 1998), wherein the Ninth Circuit observed that "[a]lthough ERISA does not explicitly define 'plan assets,' a plain interpretation of the term does not encompass future contributions not yet made." It also conflicts with <u>Trustees of the Southern California Pipe Trades Health and Welfare Trust Fund v. Temucula Mechanical, Inc.</u>, 438 F.Supp.2d 1156, 1163-65 (C.D. Cal. 2006) and numerous cases cited therein holding that persons owing contributions are not automatically ERISA fiduciaries. <u>See</u> <u>also</u> <u>Nieto v. Ecker</u>, 845 F.2d 868, 870-71 (9th Cir. 1988) (holding that a retirement plan's attorney that wrongfully failed to collect plan assets was not a plan "fiduciary"

Decision 7

Case: 09-04093   Doc# 30   Filed: 11/18/09   Entered: 11/18/09 16:28:04   Page 7 of 12

because "[u]nder this rationale anyone performing services for an ERISA plan - be it an attorney, an accountant, a security guard or a janitor would be rendered a fiduciary insofar as he exercised some control over trust assets and through negligence or dishonesty jeopardized those assets"; Witt v. Allstate Ins. Co., 50 F.3d 536, 537 (8th Cir. 1995) ("we refuse to conclude that merely possessing or controlling assets to which the Fund asserted a claim created a fiduciary relationship"); Chapman v. Klemick, 3 F.3d 1508 (11th Cir. 1993), cert. denied, 510 U.S. 1165, 114 S.Ct. 1191 (1994) ("The Eleventh Circuit found that one needs to have some relationship to the plan itself, not merely control of some small amount of purported assets of the plan, before one is a fiduciary." Witt, 50 F.3d at 537, discussing Chapman.)

The Ninth Circuit's views expressed in Cline and Collins are particularly significant here in light of the requirement under Bankruptcy Code § 523(a)(4) that the fiduciary relationship arise prior to the alleged wrongdoing. Hemmeter, 242 F.3d at 1190. This is so because, under the Fund's argument and the view expressed in Atoll Topui, a fiduciary relationship arises as the result of an obligor's failure to pay a required contribution. As the Magistrate Judge in Atoll Topui stated: "We recommend that the District Court also find that, <u>by failing to pay contributions when due</u>, Mr. Topui exercised authority and/or control over plan assets and thus is deemed a 'fiduciary.'" (Emphasis added.) Thus, under such reasoning, the wrongful act in question - "failing to pay contributions when due" - is the very act that creates the fiduciary

Decision 8

relationship. But if that is the case, then clearly the fiduciary relationship could not, and here, did not "arise prior to the alleged wrongdoing." Hemmeter, 242 F.3d at 1190; Baird, 114 B.R. at 202.

The court is not aware of any reported (or unreported) decisions, and the Fund has cited none, holding that a person that fails to make plan contributions is ipso facto acting in a "fiduciary capacity" under Bankruptcy Code § 523(a)(4). The court holds that Moxley did not act in a fiduciary capacity vis-a-vis the Fund by failing to pay his withdrawal liability.

2. Defalcation

Even if a bankruptcy debtor is found to have been acting in a fiduciary capacity within the meaning of Bankruptcy Code § 523(a)(4), a plaintiff, to prevail, must also establish that the debtor's conduct constituted a "defalcation." Hemmeter, 242 F.3d at 1190.

"The definition of 'defalcation' includes both the 'misappropriation of trust funds or money held in any fiduciary capacity; [and the] failure to properly account for such funds.' ... [T]he essence of defalcation in the context of § 524(a)(4) is a failure to produce funds entrusted to a fiduciary." Hemmeter, 242 F.3d at 1190-91. (Internal citations omitted.) Defalcation includes innocent as well as intentional failures. Id.

Here, there was no defalcation by Moxley, but only a failure to pay a contractual debt. Moxley misappropriated no assets. Moxley did not fail to account for any assets. Moxley did not fail to

Decision 9

produce any funds that had been entrusted to him.  Rather, he merely
failed to use his personal assets, to the extent he had any, and
which he obviously did not hold in trust for the Fund, to pay his
debt to the Fund.

The Fund has not cited any cases supporting the untenable
proposition that a mere failure to pay a contractual debt is a
"defalcation" under Bankruptcy Code § 523(a)(4).  Indeed, the law is
clear that a breach of the type needed to trigger
nondischargeability under Bankruptcy Code § 523(a)(4) must be a
breach of trust obligations "separate and distinct from any breach
of contract."  Baird, 114 B.R. at 202.  Here, there was no such
breach.

In re Goodwin, 355 B.R. 337 (M.D. Fla. 2006), cited by the
Fund, is not to the contrary and is of no relevance here.  In
Goodwin, the debtor, unlike Moxley, was a plan trustee and
administrator that controlled and invested plan funds.  Id. at 340.
The court held that the debtor's failure to diversify plan
investments, his placing nearly all of the funds assets in a risky
project, his failures to act in the interests of the plan
participants, his personally guaranteeing a secured loan to the plan
and quickly executing a deed in lieu of foreclosure when the loan
went into default, and his accounting failures and other wrongful
acts constituted a defalcation.  Id. at 345.  Here, as mentioned,
all Moxley is alleged by the Fund to have done to create the alleged
defalcation is to have defaulted on a contractual debt.

Decision                              10

The court holds that Moxley's failure to pay his withdrawal liability to the Fund was not a "defalcation" within the meaning of Bankruptcy Code § 523(a)(4).

D. <u>Conclusion</u>

Under the undisputed facts present here, Moxley was not acting in a "fiduciary capacity" in relation to the Fund within the meaning of Bankruptcy Code § 523(a)(4). In addition, his failure to pay his withdrawal liability was not a "defalcation" under Bankruptcy Code § 523(a)(4).

It follows that the Fund's motion for summary judgment should be denied. It also follows that no genuine issues of fact remain to be decided. The court will therefore issue its summary judgment in favor of Moxley.

**END OF ORDER**

COURT SERVICE LIST

R. Kenneth Bauer, Esq.
Law Offices of R. Kenneth Bauer
500 Ygnacio Valley Road, Suite 300
Walnut Creek, California 94596

Christian L. Raisner, Esq.
Jordan D. Mazur, Esq.
Weinberg, Roger & Rosenfeld
1001 Marina Village Parkway, Suite 200
Alameda, California 94501-1091